IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

JOYCE E. MARLOW,                    )
                                    )
            Plaintiff,              )
                                    )
      v.                            )      CIVIL ACTION NO. 2:08-cv-233-SRW
                                    )              (WO)
MICHAEL J. ASTRUE, Commissioner     )
of Social Security,                 )
                                    )
            Defendant.              )

## MEMORANDUM OF OPINION

Plaintiff Joyce Marlow brings this action pursuant to 42 U.S.C. § 405(g) and

§ 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security

("Commissioner") denying her application for disability insurance benefits and supplemental

security income under the Social Security Act.  The parties have consented to entry of final

judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record

and briefs submitted by the parties, the court concludes that the decision of the Commissioner

is due to be affirmed.

## BACKGROUND

On March 16, 2005, plaintiff filed an application for disability insurance benefits and

Supplemental Security Income.  On December 20, 2006, after the claim was denied at the

initial administrative levels, an ALJ conducted an administrative hearing.  The ALJ rendered

a decision on July 28, 2007.  The ALJ concluded that plaintiff suffered from the severe

impairments of "hypertension, insulin dependent diabetes mellitus, history of congestive heart failure, non-cardiac chest pain, uterine fibroids with pelvic pain and major depression, recurrent, moderate severity." (R. 16). He found that plaintiff's impairments, considered in combination, did not meet or equal the severity of any of the impairments in the "listings" and, further, that plaintiff retained the residual functional capacity to perform her past relevant work. Thus, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act. On January 25, 2008, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985

F.2d at 531.  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed.  Cornelius, 936 F.2d at 1145-46.

### DISCUSSION

Plaintiff alleges disability due to uncontrolled blood pressure; high levels of glucose, which causes infections; and a fibroid tumor that causes back pain.  (R. 86).  In a disability report filed in October 2006, the plaintiff stated that she suffered from new injuries, illnesses, and conditions, including a growing fibroid tumor and an abnormal liver.  (R. 146).  She stated further that her diabetes is growing worse and causes her vision problems; she feels sick all the time, is tired, has chest pains, and suffers from shortness of breath.  (R. Id.).  Plaintiff's alleged onset of disability is January 7, 2005.  (R. 96).

On March 2, 2005, plaintiff presented to the Baptist Health South Emergency Room, complaining of flu-like symptoms.  A CT scan was performed on plaintiff's abdomen and pelvis, and it was noted that plaintiff has an "extremely large . . . lobulated appearance of the uterus likely representing multiple uterine leiomyomata."  The diagnostic impression consisted of bronchitis and a uterine fibroid.  (Exhibit 1).

Plaintiff followed up with Dr. Jefferson Underwood, III on March 9, complaining of mild shortness of breath and a dry cough.  Plaintiff explained to Dr. Underwood that she was diabetic and she quit taking her blood pressure medication about three years previously; but she stated "she has been doing fine since that time."  Dr. Underwood assessed diabetes mellitus, type 2, poorly controlled; hypertensive cardiovascular disease; status post C-section;

status post recent upper respiratory infection; anemia; and proteinuria. Dr. Underwood treated plaintiff, and referred her to the Lister Hill Clinic because of plaintiff's inability to afford follow-up care. (R. 173-74). The records show that plaintiff received treatment from Dr. Corazon Mulles at the Lister Hill Clinic from March 23, 2005 through October 16, 2007. (See Exhibits 5F, 8F; R. 274C-M).

On May 26, 2005, Dr. Terrance Hughes performed a consultative examination. Plaintiff's chief complaint was fatigue. Plaintiff stated that her high blood pressure symptoms include headache and fatigue, and her diabetes mellitus symptoms include decreased vision in both eyes. Plaintiff explained that her vision has improved since she started administering insulin injections. Dr. Hughes described plaintiff as independent in her activities of daily living, ambulation, and transfers. He stated that plaintiff was able to "get on and off the exam table with ease," and "able to take her shoes off." A physical examination revealed 200/120 blood pressure, and 20/30 vision in both eyes, without corrective lenses. Dr. Hughes diagnosed plaintiff with poorly controlled high blood pressure, but noted that she was currently asymptomatic; and poorly controlled diabetes mellitus, which is leading to her fatigue and decreased vision. He suggested a referral to "an ophthalmologist for an evaluation of cataracts versus glaucoma." He explained that plaintiff presented herself as "applying for Disability secondary to fatigue and symptoms that correlate with high blood pressure and type 2 diabetes, which are poorly controlled." Dr. Hughes' functional assessment included standing and/or walking 2 hours with breaks that are more frequent; sitting 6 hours; "lifting and/or carrying occasionally 10 pounds and frequently 10

4

pounds." (Exhibit 3F).

On February 6, 2006, plaintiff sought treatment from the Lister Clinic complaining of fatigue, shortness of breath, and a swollen stomach. Dr. Mulles diagnosed her with a benign tumor, and administered an EKG to evaluate whether plaintiff suffered from congestive heart failure.[1] (R. 192). Dr. Mulles referred plaintiff to Dr. Iliana Arellano, a cardiologist. Dr. Arellano treated plaintiff on February 21, 2006, and noted that plaintiff was better since Dr. Mulles started her on an ACE inhibitor and Spironolactone – she could walk about 40 feet and sleep lying flat. Dr. Arellano noted a history of congestive heart failure on February 6, 2006 (R. 192), when plaintiff sought treatment at the Lister Hill Clinic, and noted that the plaintiff's ankle swelled during the time she was in heart failure. Plaintiff's blood pressure was 170/100. An echocardiogram was performed, revealing "an eccentric left ventricular hypertrophy[,] . . . a dilated cardiomyopathy with a severely depressed ejection fraction at approximately 20%[,] . . . moderate mitral regurgitation, moderate tricuspid regurgitation and severe diastolic dysfunction, with evidence of elevated LVEDP." Dr. Arellano's assessment indicated.

> The patient is much better, now that she has been started on Lisinopril and Spironolactone. Her echo shows a severe cardiomyopathy with [an ejection fraction] of approximately 20%. There are some segmental wall motion abnormalities present with a thinned akinetic inferior wall and thinned akinetic septum. This could certainly be secondary to ischemic heart disease.

---

[1] Dr. Mulles' treatment notes concerning the EKG results are illegible. (R. 192). Dr. Arellano interpreted the EKG report, however, and stated that the EKG "show[ed] sinus rhythm at 92 beats per minute with norma axis. She does have left atrial enlargement as well as significant LVH by voltage criteria." (R. 228).

5

Dr. Arellano suggested that plaintiff have a heart catheterization performed, and increased her prescription of Lisinopril as her blood pressure was still out of control.  (Exhibit 6F).

Dr. Mulles completed a Physician Disability Confirmation on March 10, 2006, indicating that it would be more than six months before plaintiff could work due to dilated cardiomyopathy, congestive heart failure, and hypertension. In an enclosed letter, dated March 23, 2006, Dr. Mulles explained that plaintiff was "currently being evaluated for heart failure," and "[would] not be able to be gainfully employed until the Cardiologist [] determined the extent of the heart failure and discussed her limitations."  (R. 185-86).

Plaintiff was referred to Dr. James L. Taylor for a cardiac assessment on March 30, 2006.  Plaintiff reported that she was experiencing very little chest discomfort as compared to January and February of that year, but was experiencing dysonea on exertion (DOE) with minimal exertion.  Her blood pressure was 129/76.  She stated that her energy level was improving and that helping with her twin grandchildren was easier.  Dr. Taylor's impression was "? coronary disease"; hypertension; diabetes; and "suprapubic mass, ? fibroid." (R. 255). In an enclosed letter to Dr. Mulles, Dr. Taylor explained that plaintiff would forego a catheterization, and instead obtain a stress test.  This decision was due to her doing well and reporting no cardiopulmonary symptoms.  (R. 256).  On April 10, 2006, plaintiff spoke with Dr. Taylor over the phone and stated that she had not been taking her insulin and her blood sugar was over 450.  Plaintiff was instructed to proceed with catheterization once her blood sugar was acceptable.  (R. 252).  The catheterization was performed on April 17, 2006, and revealed that plaintiff's left ventricular ejection fraction was 62%, and her left ventricle was

normal in size. (R. 248). Dr. Taylor opined that plaintiff had "normal coronary arteriograms, normal left ventriculogram, and normal renal arteriograms." (R. 249).

Dr. Alan Babb performed a consultative examination on May 12, 2006. Plaintiff explained that she was unable to work because of "general fatigue and shortness of breath." Plaintiff said that she was told in April 2006 that she had no blockages, but she did have congestive heart failure. Dr. Babb stated that he did not have the documentation concerning plaintiff's heart catheterization, ejection fraction, or elevated liver function tests, and therefore, he could not make any kind of definitive decision about plaintiff's ability to work. The physical examination revealed that plaintiff's blood pressure was 124/80. Dr. Babb's impression was hypertensive cardiomyopathy; mild clinical depression; diabetes, unknown control; large pelvic mass consistent with uterine leiomyoma; history of anemia; and elevated liver function test, unknown etiology. He noted that plaintiff appeared to be "in good shape, euvolemic, and appears not to have any specific reasons that she could not work in her chosen field of education." Dr. Babb completed a Medical Source Opinion that limited plaintiff's work related activities to occasional exposure to fumes, noxious odors, dust, mists, gases, or poor ventilation; and carrying and/or lifting 10 pounds constantly, 20 pounds frequently, and 30 pounds occasionally. (Exhibit 7F).

Dr. James Anderson was called as a medical expert at the administrative hearing held December 20, 2006. Dr. Anderson testified that plaintiff has a treatment history of hypertension; diabetes mellitus, insulin dependent; non-cardiac chest pain; pelvic pain due to uterine fibroids; and history of congestive heart failure, treated and solved. Dr. Anderson

opined that plaintiff's impairments do not meet or equal the Secretary's listing for disability, but instead, the combination of physical impairments demonstrated would allow for the full range of light work activity. According to Dr. Anderson, this was compatible with Dr. Hughes' (Exhibit 3F) and Dr. Babb's opinions (Exhibit 7F), and the cardiac catheterization (Exhibit 9F), which was normal and revealed a 62% ejection fraction. The ALJ pressed Dr. Anderson on his assessment of Dr. Hughes' opinion, which leaned more towards the range of sedentary activity. Dr. Anderson agreed, but thought this assessment was due to Dr. Hughes' opinion that plaintiff's "poorly controlled medical diseases were affecting [plaintiff] a little more than normal." Dr. Anderson noted that plaintiff's "treating record . . . show[ed] she most recently began her treatment for her diabetes and hypertension, and they [were] still not adequately controlled." Dr. Anderson stated that, with plaintiff's hypertension and diabetes, the further episodes of congestive heart failure were likely. (R. 289-94).

Dr. Randal McDaniel testified at the administrative hearing as a vocational expert. He listed plaintiff's past relevant work as a preschool teacher, retail sales clerk, clerical aid, teacher's aid, and sewing machine operator. Dr. McDaniel characterized all jobs as "semi-skilled and light occupation," with the exception of preschool teacher, which he identified as a "skilled and light occupation." The ALJ posed hypothetical questions to the VE, incorporating medical opinions and subjective complaints contained in the record. The VE opined that, with the limitations imposed by Dr. Anderson (R. 289-94) or Dr. Babb (Exhibit 7F), plaintiff would be able to return to all of her past relevant work. (R. 296). With the limitations imposed by Dr. Hughes (Exhibit 3F), plaintiff would be restricted to sedentary

work and could not perform any of her past relevant work. Plaintiff could, however, perform other jobs in the national economy. (R. 297). Lastly, he determined that, based on the plaintiff's own testimony, she would not be able to perform any work in the national economy. (R. 298).

At the hearing, the ALJ ordered a psychological evaluation of the plaintiff (R. 300), and she was referred to Dr. Guy J. Renfro on February 27, 2007. Dr. Renfro reported that plaintiff had a depressed affect, and she was tearful at times. She did not display any signs of anxiety, but she did tend to have a depressive theme to her thoughts. "[Plaintiff] was oriented as to time, place, person and situation. Her concentration skills were significantly impaired[;] [i]t seemed difficult for her to maintain concentration for an extended period of time." WAIS-III testing revealed that plaintiff was functioning at the lower end of the average range of intelligence. Dr. Renfro's impression was that plaintiff was depressed, and that "[t]his depression was manifested in increased sensitivity to bodily function and physical complaints, depressed mood, slow speech and movement, and significant problems in concentration." Dr. Renfro diagnosed plaintiff with major depression, recurrent, moderate severity in Axis I, and with diabetes and congestive heart failure in Axis III. Dr. Renfro completed a Medical Source Opinion. He assessed plaintiff with moderate limitations in responding appropriately to supervisors, co-workers, and customers or other members of the general public; understanding, remembering, and carrying out detailed or complex instructions; maintaining attention, concentration, or pace for periods of at least two hours; and maintaining social functioning. He noted that plaintiff was mildly limited in using

judgment in detailed or complex work-related decisions; dealing with changes in a routine work setting; and maintaining activities of daily living. (Exhibit 11 F).

The ALJ submitted written interrogatories to Dr. McDaniel, the VE, posing hypothetical questions similar to those asked at the hearing, but incorporating Dr. Renfro's mental limitations.  Dr. Renfro's mental limitations did not change Dr. McDaniel's opinion. Based on the limitations found in Dr. Anderson's and Dr. Babb's opinions, together with Dr. Renfro's limitations, plaintiff could return to all of her past relevant work. Dr. Hughes' limitations coupled with Dr. Renfro's evaluation would place plaintiff in the range of sedentary work, but there were still jobs available to her in the national economy.  (R. 161-161A).

The ALJ concluded that plaintiff suffers from the following severe impairments: hypertension; insulin dependent diabetes mellitus; history of congestive heart failure; non-cardiac chest pain; uterine fibroids with pelvic pain; and major depression, recurrent, moderate severity.  He found plaintiff's "slightly lower range of average IQ to be a non-severe impairment as the medical evidence reflects it imposes no limitations."  (R. 16).  The ALJ assigned "very substantial weight" to Dr. Babb's opinion, which was consistent with the opinion of Dr. Anderson.  He assigned "great weight" to Dr. Anderson's opinion, and gave "full credence" to Dr. Renfro's opinion.  The ALJ did not give any weight to Dr. Hughes' opinion because it "was a one-time only examination and [] the restrictions stated did not last a full year."[2]  Based on the evidence, the ALJ concluded that plaintiff has the RFC to perform

---

[2] The ALJ also noted that even if he "were to give full credence to [Dr. Hughes'] restrictions, the vocational expert testified that they would allow for work."  (R. 17).

"the full range of light work with the mental restrictions as noted by Dr. Renfro." (R. 21). The ALJ adopted the expert opinion of Dr. McDaniel, and concluded that plaintiff could perform all of her past relevant work as it is actually performed and generally performed in the national economy. (R. 23).

Plaintiff challenges the Commissioner's decision, arguing that the ALJ erred by (1) failing to develop the evidence fully regarding the physical and mental demands of plaintiff's past relevant work; and (2) by failing to provide a detailed analysis and explanation of the physical and mental requirements of plaintiff's past work in his decision. (Plaintiff's brief, p. 4). Plaintiff contends that the ALJ's inadequate development of the evidence regarding the physical and mental requirements of her past relevant work made it impossible for him to make a fully detailed analysis of her past work in his decision, which is required to make proper determination at step four of the sequential evaluation process. (Id.).

If the ALJ cannot make a disability determination at the first three steps of the sequential evaluation process, he must continue to step four. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). At step four, the ALJ evaluates the claimant's RFC and compares it to the physical and mental demands of the claimant's past work to determine if the claimant can perform her past relevant work. Id. Where there is no evidence of the physical and mental requirements of the claimant's past work, and the ALJ does not solicit or proffer a description of the required duties, the ALJ cannot properly determine whether the claimant has the RFC to perform her past relevant work. Schnorr v. Bowen, 816 F.2d 578, 581 (11th

11

Cir. 1987).  Evidence of the physical and mental requirements of the claimant's past work may be obtained through the claimant's own testimony, vocational reports completed by the claimant, or through the elicited opinion of a vocational expert.  SSR 82-61 ("A properly completed SSA-3369-F6, Vocational Report, may be sufficient to furnish information about past work."); SSR 82-62 ("The claimant is the primary source for vocation documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level; exertional demands and nonexertional demands of such work."); Savor v. Shalala, 868 F. Supp. 1363, 1365 (M.D. Fla. 1994) (concluding that it was clear that the ALJ determined the physical demands of the plaintiff's past work because the ALJ elicited the opinion of a VE).  "While the claimant bears the burden . . . of demonstrating an inability to return to his past relevant work, the ALJ has a concomitant duty to develop a full record in this regard." Childs v. Astrue, 2008 WL 686160, at *3 (M.D. Fla. Mar. 10, 2008); see Nelms v. Bowen, 803 F.2d 1164, 1165 (11th Cir. 1986).

In this case, the plaintiff completed a Vocational Report (R. 108-16) and a Work History Report (R. 117-30) detailing the required duties and the physical and mental demands of her past jobs as a preschool teacher, teacher's aide, and sewing machine operator.[3]  The plaintiff also testified to the requirements and demands of her past work as a preschool teacher at the administrative hearing.  (R. 285-86). The ALJ elicited the opinion of a vocational expert during the administrative hearing concerning the plaintiff's ability to

---

[3] While there is no description of the plaintiff's past work as a retail sales clerk or clerical aide, there is ample evidence concerning the physical and mental requirements of the plaintiff's past jobs as a preschool teacher (R. 87, 94, 123, 285-86), teacher's aide (R. 114), and sewing machine operator (R. 112-13).  If the plaintiff can perform one of her past relevant jobs, she is not disabled.  See 20 C.F.R. §§ 404.1520(f), 416.920(f).

perform her past relevant work.  The VE categorized her past relevant work by exertional and skill level, and described them all as either "skilled and light" or "semi-skilled and light." (R. 295-96).   The ALJ posed hypothetical questions to the vocational expert explicitly incorporating the functional limitations found in the different medical opinions contained in the record, as well as the plaintiff's subjective complaints. (R. 295-98).   The ALJ then submitted written interrogatories to the VE posing the same hypothetical questions asked during the administrative hearing, but asking the VE to consider the mental limitations contained in Dr. Renfro's evaluation (R. 269-74) together with the plaintiff's physical limitations.  (R. 160).  It is clear from the record that the ALJ adequately developed the evidence regarding the demands of plaintiff's past work.

Further, the ALJ adequately analyzed and explained his decision that plaintiff could return to her past relevant work.  The ALJ reached a conclusion concerning whether plaintiff could return to her past relevant work only after he explained his findings regarding plaintiff's credibility and RFC.  The ALJ assigned exertional and skill levels to each past job which are consistent with the VE's opinion and the Dictionary of Occupational Titles (DOT). The ALJ then explained that he was accepting the opinion of the VE, Dr. McDaniel, whose testimony and written interrogatories relating to plaintiff's past relevant work are contained in the record.  It was proper for the ALJ to rely on the expert opinion of the VE when deciding whether plaintiff could return to her past relevant work. "Indeed, although VE testimony is not required in determining whether a claimant can perform her past relevant work, see Lucas v. Sullivan, 918 F.2d 1567, 1573 n. 2 (11th Cir. 1990), [vocational experts

may offer expert opinions which] "may be used in making this determination because such an expert 'may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy[.]'" Hennes v. Comm'r of Soc. Sec. Admin., 130 Fed. Appx. 343, 346 (11th Cir. 2005)(unpublished opinion)(quoting 20 C.F.R. § 404.1560(b)(2)); see Phillips v. Barnhart, 357 F.3d 1232, 1240 n. 7 (11th Cir. 2004)(explaining that a VE's testimony constitutes substantial evidence when the ALJ poses hypothetical questions that comprise all of the claimant's impairments); see also 20 C.F.R. § 416.960(b)(2). Therefore, the ALJ did not err in his step four determination concerning plaintiff's ability to return to her past relevant work.[4]

Plaintiff further argues that the ALJ erred by according "very substantial weight" (R. 18) to Dr. Babb's opinion, and by failing to state adequately the particular reasons for assigning this weight to the medical opinion. (Plaintiff's brief, p. 5). Plaintiff takes issue with the weight accorded to the opinion because Dr. Babb indicated that he lacked information pertaining to the plaintiff's ejection fraction and elevated liver function tests, and that this lack of information made it difficult for him to make any kind of definitive decision. (R. 232-39). "Generally, the more consistent a physician's opinion is with the record as a whole, the more weight an ALJ will place on that opinion." Poellnitz v. Astrue, 349 Fed. Appx. 500, 502 (11th Cir. 2009)(unpublished opinion)(citing 20 C.F.R. § 404.1527(d)(4));

---

[4] Plaintiff makes a blanket assertion that the ALJ failed to develop and explain his decision properly. She does not, however, point to any evidence that supports the assertion that she cannot perform any of her past work; nor does she allege any error in the ALJ's RFC determination. (Plaintiff's brief, p. 3-4).

see also 20 C.F.R. § 416.927(d)(4). Thus, where an examining consulting physician's opinion does not contradict the record as a whole, the ALJ does not err by relying on that opinion. See Poellnitz, 349 Fed. Appx. at 502; see also SSR 96-6p.

Although plaintiff contends that the ALJ did not mention Dr. Babb's statements concerning the lack of information (Plaintiff's brief, p. 5), the ALJ explicitly noted Dr. Babb's concern in his decision. (R. 18). The ALJ thoroughly addressed the issue of plaintiff's ejection fraction and her brief history of congestive heart failure both during the administrative hearing (R. 292-94), and in his decision. (R. 17, 21). He further remarked that "[plaintiff] has an abnormal liver function test, yet there is no objective evidence that reflects this is a severe problem and [plaintiff] has not been referred by her treating physicians for additional treatment or other measures." (R. 22). Dr. Babb's opinion, though he lacked certain evidence pertaining to plaintiff's ejection fraction, is consistent with the medical evidence and other medical opinions. The ALJ noted, "Dr. Renfro, Dr. Babb, and Dr. Anderson all opined, despite claimant's impairments, both physical and mental, that [plaintiff] was able to perform work activity." (R. 22). Furthermore, although the ALJ did not state particular reasons for assigning "very substantial weight" to Dr. Anderson's opinion, it is clear from his decision that he credited this opinion because it was consistent with Dr. Anderson's and Dr. Renfro's opinions, and the record as a whole. See Wind v. Barnhart, 133 Fed. Appx. 684, 692 (11th Cir. 2005)(unpublished opinion)("Although the ALJ did not explicitly state that he was finding credible [the physician's] assessment, this determination was implicit from his reliance on [the physician's] opinion."). Thus, because

Dr. Babb's opinion is consistent with the record as a whole, the ALJ did not err by assigning it "very substantial weight."

## CONCLUSION

Upon its review of the record as a whole, the court concludes that the decision of the Commissioner is supported by substantial evidence and proper application of the law. Accordingly, the decision is due to be affirmed.  A separate judgment will be entered.

Done, this 30th day of April, 2010.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE